UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER P. WIDENER, et al.,

    Plaintiffs,

    v.

KING COUNTY,

    Defendant.

CASE NO. C08-1170JLR

ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter comes before the court on Defendant King County's motion for summary judgment (Dkt. # 23). Having reviewed the motion, as well as all papers filed in support and opposition, and deeming oral argument unnecessary, the court DENIES in part and GRANTS in part the motion.

**I. BACKGROUND**

This case arises out of the unfortunate development of a large sinkhole in Plaintiffs Christopher P. and Lisa M. Widener's ("the Wideners") property located in Issaquah, Washington. The Wideners's property includes a single-family residence, swimming pool,

ORDER – 1

and pool house. The property is bordered to the west by Preston Fall City Road SE ("the Preston Road") and single-family residences, to the east by the Raging River and undeveloped land, and to the north and south by undeveloped land. (Declaration of Phillip Haberman ("Haberman Decl.") (Dkt. # 31), Ex. 1 at 3.) The area east of the pool house slopes downward to the Raging River. (*Id.*) The Wideners allege that in January 2007, King County began developing and implementing plans for an emergency road repair project on the Preston Road and drainage system that destroyed the foundation of the Wideners's pool house and rendered their pool unusable. (Resp. (Dkt. # 30) at 1.) The Wideners claim that King County's actions caused them approximately $1.7 million in property damages and additional amounts in the form of emotional distress damages. (Compl. (Dkt. # 1) ¶ 29.)

Following a storm in November 2006, a portion of the Preston Road was damaged and King County subsequently began repair of the road, which runs along the Raging River. The Wideners allege that the area where the damage occurred to the Preston Road is both a slide area and an area of known instability, including a drainage stream. The Wideners contend that King County chose not to address these issues in its plans to repair the Preston Road. (Resp. at 3-4.) The Wideners point to a January 2007 email authored by Laura Casey, an environmental scientist employed by King County, stating that there is a "perennial stream in th[e vicinity] coming down the slope, across the road and the falling slope to the River. If this is the piped flow, we will deal with it following the emergency road repair." (Declaration of Michael Gossler ("Gossler Decl.") (Dkt. # 33), Ex. 13.)

ORDER – 2

On March 16, 2007, while the slide repair activity was in progress, the Wideners discovered a small sinkhole between their swimming pool and their pool house. (*Id.*, Ex. 6 & 7.) By the next day the sinkhole had grown exponentially. (*Id.*) When the Wideners contacted King County regarding the sinkhole, King County allegedly took the position that the repairs to the Preston Road did not change any drainage and therefore did not cause any damage to the Wideners's backyard. (Resp. at 5.) Eventually, however, King County agreed to perform additional storm water work on the Widener property to divert water away from the Wideners's property but by that point the damage had been done. King County did not take further action to correct the sinkhole. The Wideners began fixing the damage and installing remedial measures recommended by their expert but the expert's recommendations became too cost-prohibitive for them to continue. (Resp. at 6.) This suit followed.

The Wideners assert claims against King County for negligence, trespass by water, trespass and injury to property, intentional infliction of emotional distress, strict liability, taking of property without just compensation, nuisance, and violation of 42 U.S.C. § 1983. (Compl. ¶¶ 14 to 28.) King County moves for summary judgment on the basis that the Wideners have not come forth with evidence showing that its work on the Preston Road affected the drainage system of the upland portion of the Wideners's property. (Reply (Dkt. # 35) at 1.) King County summarizes its argument as follows: "This case can be disposed of as a matter of law; the law of gravity." (*Id.* at 2.) The point being, according to King County, that water does not flow uphill. As discussed below, however, the court is satisfied that the Wideners have come forth with sufficient evidence and expert opinion to draw a reasonable

ORDER – 3

inference that King County's work on the Preston Road contributed to the sinkhole in the Wideners's pool area.

## II. ANALYSIS

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

### A. Sufficient Evidence of Causation

Much of King County's motion is based on its contention that there is no evidence to support the Wideners's theory that the damage to their property was caused by King County's work on the Preston Road. Specifically, King County contends that the Wideners's theory that the construction work on the Preston Road blocked the preexisting flow of ground water and surface water into the drainage ditches along the Preston Road and thus backed up water onto the Wideners's property, is unsupported by any facts before the court. The court disagrees.

While the court agrees with King County that there does not appear to be direct evidence in the record affirmatively supporting the theory that, prior to construction on the Preston Road, ground and surface water bypassed the catch basin at issue (which the parties

ORDER – 4

refer to as CB#1), whereas, after the construction the ground and surface water flowed to CB#1, which backed up the hill to the Wideners's property and caused the sinkhole. This, however, does not end the inquiry. As this court routinely instructs juries before it: "The law makes no distinction between the weight or value to be given to either direct or circumstantial evidence." *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1067 (9th Cir. 2003) (internal quotation marks omitted) (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)). Accordingly, the court's analysis is not limited to its conclusion that there is no direct evidence that King County's road work caused the sinkhole. The court also must consider whether the Wideners have come forth with sufficient circumstantial evidence to support an inference that the road work caused the sinkhole. As discussed below, the court concludes that the Wideners have meet this burden.

In concluding that the Wideners have met their burden, the court relies on the combination of the undisputed timing of the development of the sinkhole – that is, the sinkhole appeared at the same time that King County was constructing the temporary roadway in the area below the Wideners's property – as well as the opinion provided by the Wideners's expert, Phillip A. Haberman. Mr. Haberman is a licensed engineering geologist with the firm of Krazen & Associates who the Wideners hired to evaluate the cause of the sinkhole on their property and to provide a recommendation for remediating and repairing the damage. Mr. Haberman, after visiting the Wideners's property on numerous occasions beginning in March 2007, opined that:

> we have a multiplicity of physical evidence and observations that have led me to conclude that [King] County's work on this project materially increased the flow

ORDER – 5

> of water into the southerly culvert channel immediately adjacent to the Wideners's pool house and patio area, and that these directed flows changed the flow of groundwater and caused the damaging sinkhole activity and site erosion.

(Haberman Decl. at 2.)

Mr. Haberman bases his opinion on (1) his own observations of the ditches south of the southern culvert; (2) the physical condition of the soil and vegetation within the area of the sinkhole along with his observation of a number of downed or falling trees; (3) his observations of fresh scarps and slumping of soils on the side slope areas near the pool house along with fresh piles of loose sediments which had only recently been deposited in the area; and (4) a review of King County's records and photographs. (*Id.*)

Mr. Haberman went on to address the issue of whether the damage to the Wideners's property could have been avoided. Mr. Haberman concluded in his report that had King County complied with the Guidelines for Bank Stabilization Projects (King County June 1993) ("the Bank Stabilization Guidelines"), the damage the Wideners suffered to their property would likely have been avoided. (Haberman Decl., Ex. 1 at 7.) According to Mr. Haberman, had King County followed the Guidelines which require a "pre-construction analysis of the hydrology, hydraulics, hydraulic geometry, fluid mechanics, fish biology, plant ecology, and geotechnical characteristics of each project," King County would have known it was re-directing substantial volumes of surface water onto the Widener property. . . ." (*Id.*)

Based on this evidence the court is satisfied that the Wideners have met their burden of showing that there is a genuine issue of material fact as to whether the sinkhole was caused by King County's road construction or some other cause. The court next considers the substantive

ORDER – 6

claims brought by the Wideners and whether they are legally and factually supported by the record before the court.[1]

**B.     Negligence, Nuisance, Trespass, and Injury to Property**

The elements of a negligence cause of action are, (1) the existence of a duty to the plaintiff; (2) breach of the duty; and (3) injury to plaintiff proximately caused by the breach. *Hertog v. City of Seattle*, 979 P.2d 400, 410 (Wash. 1999).  King County moves the court to dismiss this claim because it did not owe a duty of care to the Wideners because damage to the upland area where the Wideners's property is located was not foreseeable.  (Mot. at 15 (citing *Rikstad v. Holmberg*, 456 P.2d 355 (Wash. 1969) (holding that the question of foreseeability is essential in determining harm)).)  The record before the court is sufficient to support the Wideners's theory that the damage to their property would have been foreseeable, or possibly even known, if King County had followed its own rules and regulations before beginning work on the Preston Road.  The court relies on the opinion provided by Mr. Haberman that had King County followed the Bank Stabilization Guidelines, it would have known that it need to direct substantial amounts of water before beginning construction.  Accordingly, the court denies the motion for summary judgment on this claim.

King County does not argue the merits of the Wideners's claims for nuisance, trespass, and injury to property because it asserts that they are based on the same set of facts that

---

[1] It appears that the Wideners have abandoned their theory that the sinkhole was cause by the vibrations from King County's use of construction equipment that dropped large rocks at the "toe" of the reconstructed slope.  While the court declines to dismiss this theory on the record before it, the court expects that this "rock dropping theory" will be the subject of a pretrial motion in limine.

ORDER – 7

support their negligence claim and are thus subsumed into this one cause of action. (Mot. at 16-17; Reply at 10.) The court questions whether King County accurately states the law regarding whether these claims are all subsumed into one claim. Nonetheless, because the court concludes there is sufficient evidence to support the Wideners's negligence claim and because King County failed to argue the merits of the remaining "subsumed" claims, the court likewise denies the motion as to these claims.

### C. Intentional Infliction of Emotion Distress

The Wideners contend that King County intentionally inflicted emotional distress on them by (1) knowingly and intentionally disregarding applicable regulatory codes related to drainage, hazardous areas, and work on riverbank areas; (2) ignoring its earlier determination that tight-lining would be need for the southerly culvert; and (3) disregarding and violating a condition imposed by the Washington State Department of Fish and Wildlife ("DFW") for its hydraulic permit approval. (Resp. at 15.) King County responds that its sole action in this case was to construct a temporary traffic lane and repair an embankment, neither of which even remotely approaches extreme and outrageous conduct. (Mot. at 19.)

To support a finding of intentional infliction of emotional distress, a plaintiff must show that (1) the defendant engaged in extreme and outrageous conduct, (2) the defendant intentionally or recklessly inflicts distress on the plaintiff, (3) and the conduct of the defendant actually results in severe emotional distress to the plaintiff. *Strong v. Terrell*, 195 P.3d 977, 986 (Wash. 2008). A court must first determine "whether reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Robel v. Roundup Corp.*,

ORDER – 8

59 P.3d 611, 620 (Wash. 2002). Any claim for outrage must be predicated on behavior "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency." *Koepfel v. Bokor*, 66 P.3d 630, 632 (2003). The conduct alleged by the Wideners to support this claim, while it may give rise to a negligence claim, does not support an intentional infliction of emotion distress claim.

Viewing all the evidence in the light most favorable to the Wideners, the court is unable to find support for the notion that in repairing the Preston Road, King County engaged in behavior so "outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency and to be regarding as atrocious and utterly intolerable in a civilized community." *Koepfel*, 66 P.3d at 632. Moreover, the court is not satisfied that the Wideners have come forth with sufficient facts to support a finding that they suffered emotional distress damages as a result of King County's conduct. The court therefore dismisses the Wideners intentional infliction of emotional distress claim against King County.[2]

---

[2] The Wideners also brought a claim for strict liability. (Compl. ¶¶ 22-23.) The Wideners contend that King County conducted "hazardous activities on or near the Widener property for which it is strictly liable for all damages and injury to the Widener Property . . . ." (*Id.* at ¶ 22.) King County moved to dismiss the claim because the construction of a temporary traffic lane and repair of an embankment does not amount to "abnormally dangerous activities" as required for a strict liability claim. (Mot. at 20.) The Wideners do not respond to this argument. The court agrees with King County that the question of whether the road construction is an abnormally dangerous activity is a question of law to be decided by the court. Here, without more from the Wideners, the court is unable to find that temporary road maintenance constitutes an abnormally dangerous activity and therefore dismisses the strict liability claim against King County. *See, e.g., Klein v. Pryodyne Corp.*, 810 P.2d 917, 920 (Wash. 1991) (finding that setting off fireworks display is abnormally dangerous).

ORDER – 9

### E. Taking of Property

The Wideners assert a claim against King County for taking their property without just compensation as required pursuant to Article I, Section 16 of the Washington State Constitution. (Compl. ¶ 24.) A plaintiff alleging inverse condemnation must establish the following elements: (1) a taking or damaging (2) of private property (3) for public use (4) without just compensation being paid (5) by a governmental entity that has not instituted formal proceedings. *Phillips v. King County*, 968 P.2d 871, 888 (1998).

King County first contends that this claim should be dismissed because there is no evidence that it was the "direct or proximate cause" of the damage to the Wideners's property. The court previously rejected the argument that the Wideners had not come forth with sufficient evidence of causation. *See* Section II(a). King County also argues that the Wideners's taking claim fails because there is no allegation of duration of the interference. For there to be a taking the interference must be "chronic and unreasonable" and "not merely a temporary interference which is unlikely to recur." *See Lambier v. City of Kenewick,* 783 P.2d 596, 598 (Wash. 1989). King County relies primarily on *Miotke v. City of Spokane* for the proposition that "[t]emporary interference with a private property right, which is not continuous nor likely to be reoccurring, does not constitute condemnation without compensation." (Reply at 12 (quoting *Miotke v. City of Spokane*, 678 P.2d 803, 818 (Wash. 1984), *overruled on other grounds, Blue Sky Advocates v. State*, 727 P.2d 644 (Wash. 1986).) Yet, the paragraph preceding this language explains that there are "many cases" holding that an

ORDER – 10

invasion constitutes a taking if there is permanent or recurring damage. *Miotke*, 678 P.2d at 818.

Here, there is no question that the damage caused to the Wideners's property is potentially permanent in nature and therefore actionable as a taking. In *Wong Kee Jun v. City of Seattle*, the Washington Supreme Court explained the difference between a temporary interference and a constitutional taking:

> A mere temporary interference with a private property right in the progress of the work, especially such as might have been avoided by due care, would probably be tortious only. Improper blasting, causing debris to be cast upon the adjacent property, would seem to be tortious, and not a taking or damaging under the Constitution, but the removal of lateral support, causing slides or any permanent invasion of private property, must be held to come within the constitutional inhibition.

255 P. 645, 654 (Wash. 1927). Accordingly, the court denies King County's motion to dismiss this claim.

### F. Section 1983 Claim

Finally, the Wideners claim that King County's actions deprived them of their federally protected rights under the 5th and 14th Amendments to the United States Constitution, which is actionable pursuant to 42 U.S.C. § 1983. (Compl. ¶ 28.) In their complaint, the Wideners cite *Cox v. City of Lynnwood*, 863 P.2d 578 (Wash. Ct. App. 1993), as authority for their theory of recovery under this claim. In *Cox*, the Washington Court of Appeals found that the plaintiffs had properly stated a cause of action under section 1983 for violation of their substantive due process rights based on the city's arbitrary and capricious denial of a boundary line adjustment. 863 P.2d at 583. King County moves to dismiss the Wideners's section 1983

ORDER – 11

claim because (1) the Wideners do not allege a King County policy or custom as the basis for their claim; (2) substantive due process should not be used where the Federal Takings Clause provides the proper avenue; and (3) King County did not violate the Wideners's substantive due process rights.

A municipality is liable in a section 1983 action only when the municipality inflicts an injury; it may not be held liable under a respondeat superior theory. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To hold a municipality liable for a constitutional injury, a plaintiff must show that the municipality itself violated his rights or that it directed its employee to do so. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1994). Under this theory of liability, the focus is on the municipality's "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's Officers." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (quoting *Monell*, 436 U.S. at 690).) There are four elements of a *Monell* claim: (1) the plaintiff's federally protected right was violated; (2) the municipality had a policy or custom; (3) the policy or custom amounts to deliberate indifference to the plaintiff's right; (4) the policy or custom is the moving force behind the violation. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).

The Wideners's argument centers on their contention that King County "was bent on destroying [their] property for no legitimate reason . . . ." (Resp. at 23.) King County responds that this is not a constitutional case; if anything, it is a garden variety tort case wherein the Wideners contend that King County employees were negligent in deciding how to carry out an emergency road repair. (Reply at 6.) The court finds King County's position the

ORDER – 12

more persuasive one. There is nothing before the court that would support its finding that Project Manager John Cassidy acted pursuant to a King County custom or policy in his decision to allegedly disregard state regulations before commencing construction on the Preston Road. *See Praprotnik*, 485 U.S. at 124 (holding that the determination of whether a policy or custom exists is a question of law). Moreover, there is nothing in King County's Emergency Actions Authorization Request relating to the repair the Preston Road that supports the notion that this amounted to a policy requiring county employees to take actions that were unconstitutional pursuant to a United States Supreme Court decision. *See id.* at 122. Thus, the court dismisses this claim against King County on the basis that the Wideners fail to cite to a policy or custom that was the moving force behind the damage allegedly caused to their property.[3]

## III. CONCLUSION

For the foregoing reasons, the court DENIES in part and GRANTS in part Defendant King County's motion for summary judgment (Dkt. # 23).

Dated this 18th day of August, 2009.

JAMES L. ROBART
United States District Judge

---

[3] To the extent the Wideners allege ratification of the alleged constitutional violations committed by Mr. Cassidy, the court likewise finds their evidence insufficient. (Resp. at 23-24.)

ORDER – 13